UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NICHOLAS STEVENS, | |
| Plaintiff, | Civil Action No. 10-3928 (SDW)(MCA) |
| v. | **OPINION** |
| CRAIG WELCH, DAN MOYSE, and ACADIASOFT, INC., | |
| Defendants. | February 7 , 2011 |

**WIGENTON**, District Judge.

Before the Court is Defendants Craig Welch ("Welch"), Dan Moyse ("Moyse"), and AcadiaSoft, Inc.'s ("AcadiaSoft") (collectively "Defendants") Motion to Dismiss Plaintiff Nicholas Stevens's ("Plaintiff" or "Stevens") complaint pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6).[1]  This Court has jurisdiction pursuant to 28 U.S.C. § 1332. Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(a).  This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Fed. R. Civ. P. 78.  For the reasons stated below, this Court grants Defendants' Motion to Dismiss.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

In 2004, Welch and Moyse, both residents of Massachusetts, founded AcadiaSoft. (Compl. ¶ 9.)  AcadiaSoft, a Delaware corporation with its principal place of business in Massachusetts, provides "propriety software for managing collateral and margin related

---

[1] Because the Court decides this motion on Fed. R. Civ. P. 12(b)(2), it will not address Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

1

transactions related to derivatives securities investments." (Id. at ¶¶ 4, 10.)  AcadiaSoft developed a software program, Acadia Collateral Management ("ACM"), to "process these investments."  (Id. at ¶ 10.)  AcadiaSoft's customers include "investment managers, insurance companies, banks, corporations, mutual funds and hedge funds engaged in investment management activities."  (Id.)

In May 2005, Welch allegedly approached Plaintiff Stevens, a resident of New Jersey, about working at AcadiaSoft.  (Id. at ¶ 11.)  Stevens, who would work from his home in New Jersey, would be responsible for "provid[ing] sales and business development services of" ACM, "developing strategic business relationships to further penetrate the derivatives market," and "assist[ing] in identifying and influencing potential buyers for [] AcadiaSoft."  (Id.)  Plaintiff maintains, and Defendants dispute, that because Fidelty Investments was AcadiaSoft's only customer at that time, Defendants orally offered him "'sweat equity' in AcadiaSoft, which was expressed as a percentage of what Welch would receive upon the sale of AcadiaSoft."  (Id. at ¶ 12.)  This "percentage was quoted at 5% or $1 [m]illion."  (Id.)  Moreover, Stevens alleges that Welch purported that AcadiaSoft would be sold within three years.  (Id.)

Plaintiff contends that he agreed to work for Defendants pursuant to the above terms (the "Contract").  In addition, on May 11, 2005, Stevens entered into a Confidentiality Agreement (the "Agreement") with AcadiaSoft.  (Aff. of Dan Moyse ¶ 2.)  Relevant to this motion are Clause 7, which addresses future relations between the parties, and Clause 8, the forum selection clause.

Clause 7 reads as follows:

> Unless and until a definitive agreement between Nick Stevens and Acadia has been executed with respect to any

2

> transaction that may be discussed between them, neither Nick Stevens nor Acadia will be under any legal obligation of any kind whatsoever with respect to such transaction, by virtue of any other written or oral expression with respect to such transaction, by any officers, directors, general partners, employees, counsel, financial advisors or other representatives of Acadia or Nick Stevens, except for the matters specifically agreed to in this [] Agreement.

(Defs.' Ex. A ¶ 7) (emphasis added).  Clause 8 provides that:

> This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts, without giving effect to the conflicts laws of Massachusetts.  Any dispute arising out of this Agreement, if litigated, shall be resolved by Courts of the Commonwealth of Massachusetts, and the parties hereby consent to the jurisdiction of such courts and agree that they are a convenient forum.

(Id. at ¶ 8) (emphasis added).

Although Stevens alleges that he "embarked on an aggressive campaign to contact and introduce ACM . . . to the investment community," he did not make a sale during his tenure at AcadiaSoft. (Compl. ¶ 14.)  However, Stevens maintains that he identified two potential buyers for AcadiaSoft, Omgeo and ICAP, but Welch and Moyse refused to negotiate in good faith with the potential buyers.  (Id. at ¶¶ 14-16, 24-26.)  Stevens asserts that he ultimately terminated his employment with Defendants in March 2009 because he was receiving "little to no compensation."  (Id. at ¶ 17.)  At this time, AcadiaSoft had yet to be sold.

Subsequently, on June 18, 2010, Plaintiff filed a complaint against Defendants in the Superior Court of New Jersey, Union County, alleging breaching of contract, misrepresentation, tortiousinterference with economic opportunity, breach of fiduciary duty and the covenant of good faith and fair dealing, quantum meruit, unjust enrichment,

promissory estoppel, and constructive discharge. (Id. at ¶¶ 19-87.) Thereafter, on August 3, 2010, Defendants removed the action to the United States District Court for New Jersey and filed the subject Motion to Dismiss. Specifically, Defendants seek to dismiss Plaintiff's complaint on three alternative grounds: lack of personal jurisdiction; the forum selection clause; and failure to state a claim upon which relief can be granted.

## II.     DISCUSSION

### A. LEGAL STANDARD ESTABLISHING PERSONAL JURISDICTION

To withstand a defendant's motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), a plaintiff only needs to allege sufficient facts to establish a prima facie case of jurisdiction over the defendant. Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992). Similar to a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a district court is required to accept plaintiff's allegations and all reasonable inferences therefrom as true, In re Chocolate Confectionary Antitrust Litig., 602 F. Supp. 2d. 538, 556 (2009), and "construe disputed facts in favor of the plaintiff." Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 142 n.1 (3d Cir. 1992).

Pursuant to Fed. R. Civ. P. 4(e), federal "district courts have personal jurisdiction over nonresident defendants to the extent authorized under the law of the forum state in which the district court sits." See Sunbelt Corp. v. Noble, Denton & Assocs., Inc., 5 F.3d 28, 31 (3d Cir. 1993). New Jersey's long arm statute provides for personal jurisdiction as far as is permitted by the Due Process Clause of the Fourteenth Amendment. Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 96 (3d Cir. 2004); see Carteret Sav. Bank, FA, 954 F.2d at 145. Pursuant to the two-prong test articulated in Burger King Corp. v.

4

Rudzewicz, 471 U.S. 462, 476-77 (1985), "[t]he Court must first determine whether minimum contacts exist between a defendant and the forum state." Deflora Lake Dev. Assoc. v. Hyde Park Ltd. P'ship, 2007 U.S. Dist. LEXIS 78869, at *4-5 (D.N.J. Oct. 23, 2007). Should the Court find that the requisite minimum contacts exist, the Court should then consider whether exercise of jurisdiction would comport with fair play and substantial justice. Id. at *6 (internal quotations and citations omitted.)

The Fourteenth Amendment permits a state to exercise jurisdiction over a nonresident defendant only where "the defendant purposefully avails itself of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protections of its laws." Burger King Corp., 471 U.S. at 475 (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)). As a result, jurisdiction may not be exercised over a defendant merely "on the basis of random, fortuitous, or attenuated contacts, or the unilateral activity of another party or a third person." Deflora Lake Dev. Assoc., 2007 U.S. Dist. LEXIS 78869, at *6 (internal quotations and citations omitted). Plaintiff has the burden of proving that the defendant has purposefully availed himself or herself of the forum state. Burke v. Quartey, 969 F. Supp. 921, 924 (D.N.J. 1997).

Personal jurisdiction may be exercised on the basis of either a defendant's general or specific contacts with the forum state. Id. For a court to exercise general jurisdiction over a defendant, the defendant must maintain "continuous and systematic contacts" with the forum state. Remick v. Manfredy, 238 F.3d 248, 255 (3d. Cir. 2001). The facts required to establish general jurisdiction must be "extensive and persuasive." Reliance Steel Prods. Co. v. Watson, Ess, Marshall & Enggas, 675 F.2d 587, 589 (3d Cir. 1982) (quoting Compagnie des Bauxites de Guinea v. Ins. Co. of N. Am., 651 F.2d 877, 890

5

(3rd Cir. 1981) (Gibbons, J., dissenting)). General jurisdiction can be exercised over a defendant "even if the plaintiff's [claims] arise[] from the defendant's non-forum related activities." Remick, 238 F.3d at 255.[2]

Alternatively, a plaintiff may rely upon a defendant's specific contacts with the forum state if it cannot establish general jurisdiction over the defendant. Personal jurisdiction pursuant to such contacts is known as specific jurisdiction. Id. Specific jurisdiction is present when a claim is related to or arises of out the defendant's contacts with the forum. Dollar Sav. Bank v. First Sec. Bank of Utah, 746 F.2d 208, 211 (3d Cir. 1984). To determine whether specific jurisdiction is present, a court must first consider whether the defendant had the minimum contacts with the forum necessary for the defendant to have "reasonably anticipate[d] being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980) (citations omitted). What constitutes minimum contacts varies with the "quality and nature of defendant's activity." Hanson, 357 U.S. at 253. In assessing the sufficiency of the minimum contacts for personal jurisdiction, the court must focus on the "relationship among the defendant, the forum and the litigation." Keeton v. Hustler, 465 U.S. 770, 775 (1984) (quoting Shaffer v. Heitner, 433 U.S. 186, 204 (1977)). Otherwise stated, there must be at least "a single deliberate contact" with the forum state that relates to the cause of action. United States Golf Ass'n v. United States Amateur Golf Ass'n, 690 F. Supp. 317, 320 (D.N.J. 1988). The unilateral acts of the plaintiff, however, will not amount to minimum contacts. Helicopteros Nacionales de Colombia, S. A. v. Hall, 466 U.S. 408, 417 (1984); Hanson, 357 U.S. at 253.

---

[2]Plaintiff is not alleging that general jurisdiction exists over Defendants; therefore, this Court's exercise of jurisdiction can only be pursuant to Defendants' specific contacts with New Jersey.

Second, assuming minimum contacts is established, a court may inquire whether "the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" Burger King Corp., 471 U.S. at 476 (quoting Int'l Shoe Co. v. Wash., 326 U.S. 310, 320 (1945)). For personal jurisdiction to comport with "fair play and substantial justice," it must be reasonable to require the defendant to defend the suit in the forum state. See World-Wide Volkswagen Corp., 444 U.S. at 292. To determine reasonableness, a court considers the following factors:

> the burden on the defendant, . . . the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, . . . the interstate judicial system's interest in obtaining the most efficient resolution of controversies[,] and the shared interest of the several States in furthering substantive social policies.

Id. (internal citations omitted).

In determining whether Plaintiff has established that this Court has specific jurisdiction over Defendants, the Court will engage in "a claim-specific analysis," Remick, at 238 F.3d 255-56, and consider Plaintiff's contract and tort claims separately. This is "because there are different considerations in analyzing [specific] jurisdiction over contract claims and certain tort claims." Id.

### B. PERSONAL JURISDICTION OVER PLAINTIFF'S CONTRACT CLAIMS

Plaintiff alleges eight claims relating to his Contract with Defendants: (1) breach of contract, (2) misrepresentation, (3) breach of the covenant of good faith and fair dealing, (4) breach of fiduciary duty, (5) quantum meruit, (6) unjust enrichment, (7) promissory estoppel, and (8) constructive discharge (collectively "contract claims").

In determining Defendants' Motion to Dismiss for lack of personal jurisdiction, the Court must first consider whether minimum contacts exist between Defendants and

7

the State of New Jersey such that this Court's exercise of specific jurisdiction over Defendants comports with due process.  <u>Deflora Lake Dev. Assoc.</u>, 2007 U.S. Dist. LEXIS 78869, at *4-5.  This Court finds that insufficient minimum contacts exist to grant personal jurisdiction over Defendants.

Plaintiff asserts that minimum contacts exist because: (1) "it is reasonable to infer that" he negotiated the Contract from his home in New Jersey; (2) Defendants knew that Plaintiff would work from his home as this was part of the Contract; and (3) Plaintiff spent seventy percent of his time working in New Jersey.  (Pl.'s Op. Br. 6-7.)

In determining whether Defendants had requisite contacts with New Jersey, the Court "must consider the totality of the circumstances, including the location and character of the contract negations, the terms of the contract and the parties' actual course of dealings."  <u>Remick</u>, 238 F.3d at 256.  Additionally, without more, the presence of a contract between a nonresident and a forum resident is insufficient to establish minimum contacts.  See <u>Burger King Corp.</u>, 471 U.S. at 47.  Further, "informational communications in furtherance of [a] contract do not establish the purposeful activity necessary for a valid assertion of personal jurisdiction over" the Defendants.  <u>Sunbelt Corp.</u>, 5 F.3d at 32.

Although Defendants sent payments to Plaintiff at his home for his services, Plaintiff negotiated the Contract from his home, (Pl.'s Op. Br. 6, 7), and Defendants were aware that Plaintiff would work from his home, (Compl. ¶ 11), the "totality of the circumstances" dictates against a finding of personal jurisdiction.  Plaintiff was a salesman who spent a substantial portion, thirty percent, of his time traveling.  (Compl. ¶ 18.)  That Plaintiff chose to live in New Jersey and decided to use his home as a base of

operations is a mere fortuity, see Keeton, 465 U.S. at 774, and such fortuitousness cannot be the basis of personal jurisdiction without raising concerns of due process. Id. This Court's decision is also supported by several other factors. Though Defendants were "continuously informed," (Compl. ¶ 14), of Plaintiff's progress in finding business for AcadiaSoft, be it by phone or other method of communication, Plaintiff has not alleged that Defendants made regular visits or ever came to his New Jersey home office to discuss business matters. Compare with Teclordia Tech, Inc., v. Telkom SA Ltd., 458 F.3d 172 (3d. Cir. 2006) (traveling to the forum state to consult with another party to a contract may be sufficient for minimum contacts). In any event, communication by phone or other method, even if consistent over a period of time, is not enough to confer jurisdiction as this would fall under the category of "informational communication[] in furtherance of a contract." Sunbelt Corp., 5 F.3d. at 32; see also Stuart v. Spademan, 772 F.2d 1185, 1193 (5th Cir. 1985) ("an exchange of communications between a resident and a nonresident in developing a contract is insufficient of itself to be characterized as purposeful activity invoking the benefits and protection of the forum state's laws"). In sum, while the Court recognizes that the parties were involved in some form of business arrangement, Defendants' involvement in this arrangement within New Jersey did not rise to the level required, that of minimum contacts, for this Court to exercise jurisdiction over Defendants.

Furthermore, underlying the Court's minimum contacts analysis is the question whether Defendants could reasonably have anticipated being haled into Court in New Jersey. World-Wide Volkswagen Corp., 444 U.S. at 297. The parties, as a result of their

execution of the Agreement,[3] expected any legal disputes to be resolved in the "Courts of the Commonwealth of Massachusetts." (Defs.' Ex. A ¶ 8.) Nonetheless, Plaintiff contends that the Agreement is inapplicable because his claims do not "concern the improper disclosure of confidential information by any of the parties." (Pl.'s Br. 4.) Plaintiff's narrow interpretation of the Agreement is unpersuasive. As Defendants rightly assert, the Agreement does not exclusively pertain to confidentiality. (Defs.' Reply Br. 3.) Specifically, Clause 7 details the parties' legal obligations towards each other. (See Defs.' Ex. A ¶ 7.) Accordingly, this Court concludes that Defendants did not anticipate being haled into court in New Jersey on the basis of Plaintiff's contract claims. Thus, this Court has no jurisdiction over Defendants.

Finally, Plaintiff's request for limited discovery on this issue is futile, as the manner in which Plaintiff was paid will not affect the Court's determination.

### C. PERSONAL JURISDICTION OVER PLAINTIFF'S TORTIOUS INTERFERENCE WITH ECONOMIC OPPORTUNITY

Plaintiff also alleges a tort claim, tortious interference with economic opportunity. For this Court to have jurisdiction over the tort claim, Plaintiff must satisfy the "effects test" established by the Supreme Court in Calder v. Jones, 465 U.S. 783 (1984). The Third Circuit has stated that the "effects test" requires that a plaintiff show that: (1) the defendant "committed an intentional tort," (2) "the plaintiff . . . felt the brunt of the harm

---

[3] Plaintiff, relying on Rosenau v. Unifund Corp., 539 F.3d 218, 225 (3d Cir. 2008), argues that the Court can only consider the Agreement if this motion is converted into a motion for summary judgment under Fed. R. Civ. P. 56(c) because it is outside of the pleadings. (Pl.'s Br. 1, 4.) However, although the general rule is that "a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings . . . an exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d. Cir. 1997) (internal quotations and citations omitted); see also DiFronzo v. Chiovero, 2011 U.S. App. LEXIS 640, at *4 (3d. Cir. Jan. 12, 2011). Here, the Court finds that the Agreement is integral to the complaint because it expresses the parties' intent.

. . . in the forum, such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of the tort," and (3) "the defendant . . . expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity." IMO Indus. v. Kiekert AG, 155 F.3d 254, 256 (3d. Cir. 1998).

Applying the three part test set forth in IMO Indus., this Court concludes that Plaintiff has not established personal jurisdiction over Defendants with respect to his tort claim. Plaintiff has satisfied the first two parts of IMO Indus.'s three part test because tortious interference with economic opportunity is an intentional tort, Printing Mart-Morristown v. Sharp Electronics Corp., 116 N.J. 739, 750 (1989), and Plaintiff suffered the brunt of the harm in New Jersey because he resides here. But, the Court finds that Plaintiff has not sufficiently shown that Defendants expressly aimed their tortious conduct at New Jersey, such that New Jersey is "the focal point of the tortious activity." IMO Indus., 155 F.3d at 256. The basis of Plaintiff's tort claim is that Defendants decision not to sell AcadiaSoft was done in bad faith to deprive Plaintiff of his "sweat equity." (Compl. ¶¶ 36-41.) Taken as true, these allegations are insufficient to support the Court's exercise of personal jurisdiction over Defendants. A defendant's knowledge that a plaintiff resides in the forum state, without more, will not amount to "behavior intentionally targeted and focused" on the forum state. IMO Indus., 155 F.3d at 263 (internal citations omitted). In a case similar to the one at bar, Esab Grp., Inc. v. Centricut, Inc., 126 F.3d 617 (4th Cir. 1997), which has been treated favorably by the Third Circuit, a corporation located in South Carolina initiated a lawsuit against a New Hampshire company. Id. at 621. The Plaintiff alleged that the defendant had participated

11

in a conspiracy to appropriate plaintiff's trade secrets and customer lists.  Id.  The Plaintiff claimed that the court had jurisdiction over the Defendant because the Defendant knew the acquisition of the Plaintiff's trade secrets could decrease the Plaintiff's sales.  Id. at 625.  The Fourth Circuit held that such knowledge could not be the sole basis for concluding that the Defendant expressly aimed its tortious conduct at the forum.  Id.  According to the Fourth Circuit, if the court were to hold that such knowledge alone would be sufficient, "[i]nstead of grounding jurisdiction on a defendant's decision to purposely avail[] itself of the privilege of conducting activities within the forum state or on a defendant's activities expressly aimed at the forum state, jurisdiction would depend on a plaintiff's decision about where to establish residence." Id. at 625-26 (internal quotations and citations omitted).  Similarly, Plaintiff rests his argument that he satisfies the third prong of IMO Indus. on Defendants' awareness of the consequences of their alleged tortious activity.  For the reasons stated above, this is insufficient.

### III.   CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is GRANTED.

**SO ORDERED.**

s/ Susan D. Wigenton<br>**Susan D. Wigenton, U.S.D.J.**

cc:  Madeline Cox Arleo, U.S.M.J.